UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number 07-60015-CIV-GRAHAM/O'SULLIVAN

TERRY TUCKER, on his own behalf
and others similarly situated,

    Plaintiff,

v.

LINDSTROM AIR CONDITIONING,
INC., et al.

    Defendant.
_____/

## **DEFENDANTS' RESPONSE TO MOTION FOR ATTORNEY FEES AND COSTS**

The defendants, Lindstrom Air Conditioning, Inc., et al, (collectively, the "defendants"), by and through undersigned counsel, and pursuant to Local Rule 7.1 C, files this response to the plaintiffs' motion for attorney fees and costs, and state:

### **Introduction**

1. From the inception of this case, the conduct of the plaintiffs and their counsel has been to play a game of "hide and go seek." The plaintiffs and their counsel intentionally withheld relevant information from the defendants, failed to follow court orders, knowingly filed false statement of claims and consistently obfuscated the ability of the defendants to adequately evaluate the claims of the plaintiff -- including even this pending claim for attorney fees and costs.

2. When the relevant facts are distilled, it will become immediately apparent that the plaintiffs and their counsel consistently and intentionally created unnecessary work for all interested parties, including This Honorable Court. The sole intention of such conduct was to

artificially inflate their request for attorney fees and costs. This conduct should not be rewarded with a disproportionate judgment for attorney fees and costs. In fact, it is respectfully suggested this court initiate an inquiry into the conduct of counsel pursuant to Federal Rule of Civil Procedure Rule 11(c)(1)(B) based on the multiple failures of counsel to follow court orders, the failure to communicate with clients, filing a deceptive statement of claim, requesting undeserved fees and otherwise prolonging litigation.

**Brief Procedural History**

3.   This case was filed by The Shavitz Law Group on January 4, 2007. [DE 1]. The complaint was identical in format to the more than one thousand three hundred and five (1305) cases filed by The Shavitz Law Group since 2000. See e.g. Diaz v. Sunny Isles Mart, Inc., 06-23036-CIV-COOKE/BROWN, [DE 1, Form Complaint]; CM/EFC, Query: "Shavitz, Gregg" & "Attorney."

4.   There are no specific facts contained in the complaint other than a date of hire. Nonetheless, the counsel block billed almost an hour for the perfunctory and clerical task of nothing more than inserting the name of a plaintiff, inserting the name of a defendant, and inserting a date of hire. See Motion for Attorney Fees and Cost, Ex. C, p.1.

5.   Lindstrom Air filed its answer and affirmative defenses on February 5, 2007. [DE 5] On March 26, 2007, this court entered a Statement of Court Practices in FLSA Cases. [DE 13] Among the requirements was for all plaintiffs to file a "Statement of Claim" in order to put the defendants on notice of the specific financial damages alleged by the plaintiffs. This is especially necessary in cases filed by The Shavitz Law Group since they invariably fail to specific economic damages on behalf of the plaintiffs in either their complaint or the notices of opt-in plaintiffs. See [DE 1, 12, 20 and 22].

6.      Despite all of the delay tactics of the plaintiffs, as set forth in detail below, the defendants managed to resolve all of the claims of the plaintiffs by July 20, 2007, [DE 78] -- just four (4) months after this court filed its Statement of Court Practices in FLSA Cases [DE 13], and less than one month after the "hold out plaintiff," Francisco Cajigas filed his revised statement of claim [DE 71].  When juxtaposed against the conduct of the plaintiffs, it is shocking that the defendants managed to resolve this matter at all, nonetheless within one month of the last plaintiff filing his revised statement of claim.

## **The Intentional Withholding of Statements of Claim**

7.      As stated above, this court entered on March 26, 2007 and order requiring the plaintiffs to submit statements of claim.  [DE 13].  Of course, statements of claim are necessary to allow the defendants to adequate review and analyze the alleged economic damages of the plaintiffs.

8.      In theory and practice, the statement of claim should be an accurate rendition of unpaid wages alleged by the plaintiffs.  Such statements are necessary when the plaintiffs vaguely allege -- as they did in this case -- "unpaid wages." [DE 1].  Elsewise, a defendant is left to guess as to the amount claimed, is unable to evaluate the calculations of the plaintiff, and is unable to prevent the accrual of unnecessary attorney fees and costs.

9.      Two of the four plaintiffs -- Tucker and Cajigas -- provided only an "average" calculation of unpaid wages under FLSA.  [DE 14].  This average calculation was intended to obfuscate the ability of the defendants to evaluate the exact amount of damages claimed by these plaintiffs.  This is borne true by the fact that Lindstrom Air previously provided pursuant to

mandatory initial disclosures and discovery all of the personnel and payroll records of the plaintiffs.[1]

10.  The defendants suggested in their statements of claim they would revise their statements of claim upon receipt of their pay records.  Id.  Mr. Tucker received all of his payroll records but never revised his statement of claim.  As set forth below, not only did Mr. Cajigas have documents from Lindstrom Air pertaining to his payroll, but he also had in his possession his own payroll records.  Unfortunately, Mr. Cajigas and his counsel intentionally withheld those documents from the defendants until pressed to disclose the documents in a deposition four months later.

11.  The remaining two defendants -- Christian and Davis -- refused outright to provide a statement of claim.  This is true despite a court order requiring plaintiffs to provide a statement of claim and despite multiple, informal requests by the defendants to comply with court order.[2]  Because of the intentional delay of the plaintiffs and their counsel, the defendants were forced to file on June 10, 2007 a motion to compel compliance with court order.  [DE 43].

12.  Magistrate Judge O'Sullivan quickly realized the intentional delay of the plaintiffs and ordered plaintiffs Christian and Sullivan to file statements of claim in compliance with the order of Judge Graham.  [DE 45].  Plaintiff Christian did not file his statement of claim until June 25, 2007 -- more than six (6) months after litigation commenced. [DE 67].  Once plaintiff Davis finally announced his claim, it was resolved by the defendants even before Mr. Davis was required to file his statement of claim.  [DE 54].  In short, the defendants did everything possible

---

[1] As discussed in more detail, below, the statement of claim filed by Mr. Cajigas was not only vague, it was blatantly false. Further, counsel for the plaintiff did not even obtain relevant documents from Mr. Cajigas until the day of his deposition four months later.

[2] Local Rule 7.7 does not permit filing correspondence of the parties, but the defendants would gladly provide the multiple informal requests for the plaintiffs to simply comply the court's orders regarding statements of claim.

to avoid protracted litigation, while the plaintiff and its counsel played a game of "hide and go seek" as it pertains to information which should have been provided months earlier, thus delaying settlement of this matter and otherwise attempting to improperly inflate its attorney fees.

13.     It is reasonably believed the plaintiffs and their attorneys refused to provide statements of claim so as to prevent the defendant from resolving the matter promptly. As proven by the timing of settlements, once the plaintiffs simply provided statements of claims, the matters were resolved within days. Nonetheless, the plaintiffs and their counsel have the audacity to request almost $70,000 in attorney fees for having to spend time "litigating" this case. When reviewed in context, it is clear that the plaintiffs were merely delaying inevitable settlements by withholding relevant information. It would be patently unfair to charge the defendants with the outrageous attorney fees claimed by the plaintiffs when northing but filing the initial complaint and filing accurate statements of claim were necessary.

14.     Make no mistake, the plaintiffs are seeking an obscene amount of attorney fees which finds its genesis in the inequitable conduct of the plaintiffs and their counsel. After all, the longer the plaintiffs withhold relevant information, the longer counsel for the plaintiffs can work on the matter with the intent to accumulate unnecessary attorney fees and costs. To suggest the defendants somehow created the resulting attorney fees is factually incorrect and intellectually dishonest.

## The Deceptive Conduct of Opt-in Plaintiff, Francisco Cajigas and Counsel

15.     It is with deep regret that the defendants must bring to the attention of this court the blatantly false and misleading conduct of opt-in plaintiff, Mr. Cajigas, and counsel for the plaintiff, The Shavitz Law Group. After reviewing the below facts, there will be little doubt that

conduct of Mr. Cajigas and counsel for Mr. Cajigas is sanctionable pursuant to Federal Rule of Civil Procedure Rule 11(c)(1)(B), which permits the court to unilaterally initiate an inquiry into the conduct of a party and its counsel.

The "Original" Statement of Claim

16. This court ordered on March 26, 2007 all plaintiffs to file a statement of claim setting forth their alleged damages. [DE 13]. Pursuant to court order, Mr. Cajigas filed an original -- *and blatantly false* -- statement of claim on March 28, 2007. [DE 14]. In that statement of claim, Mr. Cajigas claimed $18,326.00 in total damages. Id.

17. On April 9, 2007, the defendants filed their response to original statement of claim filed by Mr. Cajigas and denied the alleged damages. [DE 18]. This denial was based on the personnel file of Mr. Cajigas (which showed that he was disabled for a portion of his employ, and he was salaried employee exempt from the FLSA for another portion of time), and his payroll records (which demonstrated that Mr. Cajigas had much fewer weeks of overtime status). Both the personnel file and payroll records were produced by the defendants pursuant to Local Rule 16.1 and discovery responses. Nonetheless, counsel for Mr. Cajigas proceeded vigorously for over three (3) months on the false statement of claim.

18. In fact, Mr. Cajigas admitted in his deposition that he never saw or approved the original statement of claim. It was counsel for Mr. Cajigas who prepared the statement of claim without the benefit of the document produced by the defendants and without the benefit of documents which Mr. Cajigas admitted in deposition he maintained (but did not produce) until the day of his deposition.

19.     The deposition of Mr. Cajigas was taken on June 27, 2007. This deposition took place three months *after* Mr. Cajigas and his attorney filed their original statement of claim. In that deposition, the following testimony was obtained:

> Q.   Don't tell me who might have told you this, but are you aware that the Court that presides over this matter, Judge Graham in particular, required you to provide what is called a "Statement of Claim?"
>
> A.   No.
>
> Q.   Are you aware that a Statement of Claim was filed on your behalf with the court?
>
> A.   No.
>
> Q.   Did you ever authorize, to your knowledge, or see a statement of claim that was prepared on your behalf?
>
> A.   No.

(Cajigas Depo., p. 9, ll. 7-19).[3] Obviously, Mr. Cajigas was unaware of the order requiring him to file a statement of claim, Mr. Cajigas did not participate in the preparation of a statement of claim, Mr. Cajigas did not see the statement of claim before it was filed, and Mr. Cajigas did not authorize the original statement of claim. Mr. Cajigas did not even know why the statement of claim was filed by his attorney:

> Q.   As you sit here today, you don't know why it was filed; is that a fair statement?
>
> A.   Correct.

(Cajigas Depo., p. 20, ll. 6-8). Worse yet, Mr. Cajigas and his counsel grossly and falsely inflated the statement of claim to the "precise" amount of $18,326.00. [DE 14].[4]

---

[3]    Excerpts of the deposition of Mr. Cajigas have been filed contemporaneous with this response in opposition to the motion for attorney fees and costs.

[4]    As se forth below, Mr. Cajigas was forced to file an amended statement of claim based on the concessions obtained during deposition.

<u>The Failure to Produce and Review Documents Prior to Filing the Statement of Claim</u>

20.     Prior to filing the original statement of claim, Mr. Cajigas maintained at all times relevant employment records from Lindstrom Air. Those records were only provided by Mr. Cajigas to his counsel on June 27, 2007 -- the very day of his deposition.

> Q.   Mr. Cajigas, the documents that you gave your attorney and your attorney has now given me, are these documents that you kept within you possession since leaving Lindstrom Air Conditioning?
>
> A.   Yes.
>
> Q.   And how did you keep these documents?
>
> A.   In my records, a file.
>
> \* \* \*
>
> Q.   These documents have been in your possession custody and control?
>
> A.   Right.
>
> Q.   From the time you left Lindstrom Air Conditioning until -- was it today?
>
> A.   Yes.
>
> Q.   Did you provide them to your attorney before today?
>
> A.   No.

(Cajigas Depo., p. 7-9, ll. 24-25, 1-25, 1-4). As testified, Mr. Cajigas had documents available to formulate an accurate statement of claim. Mr. Cajigas and his counsel simply ignored those documents.

21. Mr. Cajigas failed to even review those documents until long after his attorney filed his original statement of claim. Mr. Cajigas testified that the records remained untouched until months *after* his attorney filed his original statement of claim:

> Q. Have you undertaken yourself, I don't want to know any work that you and your attorney did together, have you, yourself reviewed these records to come up with an amount of overtime hours that you worked in any given week?
>
> A. I did, yes.
>
> Q. When did you do that?
>
> A. I would say a -- about a couple -- about a month ago.
>
> Q. We are talking about May '07?
>
> A. Yes, uh-huh.

(Cajigas Depo., pp. 14-15, ll. 7-17). Since the original statement of claim was filed on behalf of Mr. Cajigas on March 28, 2007, this means Mr. Cajigas did not even bother reviewing records that were always in his possession to formulate an accurate statement of claim until two months after his attorney filed a statement of claim. In effect, Mr. Cajigas wasted his time, wasted counsel time, and deceived all interested parties (including this court) by filing an uninformed and false statement of claim.

22. In point of fact, Mr. Cajigas did not even formulate a "ballpark" of his damages until *after* he filed his statement of claim. He stated:

> Q. So would it be fair to say, and again, I told you I was going to try to use day-to-day terms, would it be fair to say that before -- well, no, excuse me. In May of '07, when you finally reviewed these documents, that it was basically just a ballpark?
>
> A. That's correct.

(Cajigas Depo., p. 15, ll. 19). Further, Mr. Cajigas did not even review or compare his "ballpark" estimate of damages to the documents provided by Lindstrom Air in March 2007 pursuant to the voluntary disclosure requirements of Local Rule 16.1:

> Q. I'm going to ask you a different question now. Did you receive any documents from your attorney prior to today, which included pay records, or pay stubs or anything like that?
>
> A. No.
>
> Q. So you didn't have the benefit and you didn't review any documents that Lindstrom may have provided in the court of this litigation, correct?
>
> A. Correct.

(Cajigas Depo., pp. 15-16, ll. 20-25, 1-4). Meaning, not only did Mr. Cajigas completely ignore the records that he had in his possession, but he likewise failed to review the documents provided by Lindstrom Air in order to formulate anything other than an ill-informed and unauthorized statement of claim.

The "Revised" Statement of Claim

23. On July 2, 2007, Mr. Cajigas filed a "revised" statement of claim. [DE 71]. Not surprisingly, the revised statement of claim was filed after Mr. Cajigas was exposed during deposition as having never reviewed or authorized a prior statement of claim. Further, the revised statement of claim was filed after Mr. Cajigas apparently reviewed the documents which were in his and his attorney's possession since even before the inception of litigation. This necessarily delayed the entire proceeding, thereby creating additional attorney fees and costs for all parties. It would be grossly unfair and inequitable to suggest the plaintiff should obtain attorney fees for the malfeasance of a plaintiff.

24. The revised statement of claim also proved that the original statement of claim was blatantly false. That is, the original statement of claim filed on March 28, 2007 suggested

damages of $18,326.00.  [DE 14].   The revised statement of claim filed on July 2, 2007 alleges damages of just $9,645.12.  [DE 71].  Of course, the plaintiff still had the audacity to request ironically additional, liquated damages for the "willful" conduct of the defendants.  To be clear, only after Mr. Cajigas was pressed under oath to tell the truth, did he and his attorney file a "revised" statement of claim.  When the revised statement of claim was filed, it was proven that the original statement of claim was grossly and <u>*falsely inflated by almost 100%.*</u>

25. Mr. Cajigas and his attorney attempt to "soften" their previous statement of claim by even conceding that many weeks taken into account in the original statement of claim were incorrect. [DE 71, p. 2].  That is, the original statement of claim tried to request three (3) months of time for which Mr. Cajigas was disabled and not even working at Lindstrom Air.  <u>Id.</u>  The revised statement of claim "corrects," i.e., admits, this prior misstatement of fact.  <u>Id.</u>

26. The revised statement of claim was filed by Mr. Cajigas on July 2, 2007.  [DE 71].  Once a truthful statement of claim was filed, it took the defendants less than twenty (2) days to consummate a settlement with Mr. Cajigas.  <u>See</u> Notice of Acceptance of Offer of Judgment [DE 78].  A simple and quick review of the actual timeline of events proves that the defendants did nothing to forestall resolution of this matter, nor was protracted litigation ever necessary.  Once the plaintiffs simply complied with court order and filed accurate statements of claim, the matter was resolved.

27. The plaintiffs, on the other hand, withheld relevant information and provided false information to the defendants, thereby requiring litigation of this matter.  It is actually insulting for the plaintiffs to engage in such inequitable and deceitful conduct on the one hand, and then hold out their other hand for almost $70,000 in attorney fees in costs.  Such conduct should not be rewarded.

**The False Time Ledgers**

28.     The bizarre conduct of the plaintiff does not stop with substantive malfeasance.  It continues into its claim for attorney fees and costs.  In response to a request for production regarding attorney fees and costs, the plaintiffs served a fee ledger dated July 27, 2007.  Not surprisingly by this point, counsel for the defendants had to obtain a court order for the simply courtesy of having the plaintiffs provide a fee ledger underlying the claim for attorney fees and costs.  See Order of Magistrate Sullivan, June 26, 2007 [DE 70].

29.     The fee ledger was an inaccurate accounting of time and fees.  [DE 97].  It included "billable time" for secretaries Iris Zambrano and clerical work undertaken by attorneys and paralegals.  Id. at *passim*.  It also include impermissible "block billing," contained settlement authority which was never ethically conveyed to the defendants, billed twice for the same activities, and otherwise included impermissible billing entries.  Id. *passim.*[5]

30.     When the plaintiffs eventually filed their motion for attorney fees and costs, may of the fee entries contained on the prior fee ledger "disappeared."  For instance, all of the fee entries for Iris Zambrano disappeared.  See [DE 89, Ex. C].  Many of the entries for paralegals were showed up as "0.00."  Id.  However, many of the same improper entries remained.  This includes block billing, billing for travel time, interoffice conferences and clerical activities which were billed by attorneys and/or paralegals.  All of this and more were improperly billed despite the ease in which the entire matter would have been resolved if only the plaintiffs complied with court orders and disclosed relevant information.

---

[5]     The defendants have requested a hearing on the pending motion to specifically point out the inappropriate billing of the plaintiff.

**The Deceitful Billing of Research for the Pending Motion**

31.     The Shavitz Law Group have filed many motion for attorney fees and costs. Indeed, the plaintiffs file a recent motion for attorney fees and costs in the case of <u>Stephone v. Bylbos Trading, Inc.</u>, 06-80067-CIV-RYSKAMP/VITUNAC.  That motion is virtually identical to the pending motion filed in this case.  <u>See and compare</u> [DE 89, 99].  Not only is the research identical, but the format of the motion is almost identical.  <u>Id.</u>  Nonetheless, the plaintiff billed 8.7 hours of research and writing to a motion which contained no new research.  <u>See</u> [DE 89, Ex. C].  More disturbing, the plaintiff then bills 8.0 hours of time for conduct which has not yet taken place, indicating that the billing entries of the fee ledger are not contemporaneous, as required. Instead, the plaintiffs merely "guess" as to work, and seek attorney fees and costs for that work.

32.     It is not lost on the defendants that the plaintiff is seeking an egregious hourly rate and time entries, which have been previously discounted by other judges reviewing similar motions filed by The Shavitz Law Group.  For instance, Judge Kenneth Ryskamp denied the plaintiff both the hourly rate sought and the number of hours sought.  <u>See</u> Order in <u>Stephone v. Bylbos Trading, Inc.</u>, 06-80067-CIV-RYSKAMP/VITUNAC, filed as [DE 100] for ease of reference.  In that case, it was not indicated -- as in this case -- that the plaintiffs failed to comply with court orders and filed false statements of claim, thereby causing several months in litigation. Thus, the defendants respectfully suggest that not only should there be a reduction in hourly rate and time, but swaths of time post-dating the statement of claims and caused as a result of Mr. Cajigas' false statement of claim should be entirely deleted.  This would amount to more than half the time claimed.  This is a very fair retort to conduct which stymied litigation, avoided court orders, deceived the parties and the court, as well as dragging litigation for the sole purpose of claims an egregious fee award.

**Conclusions of Fact and Law**

33.     This court is empowered to consider "such factors as it deems appropriate" when awarding attorney fees and costs. Goss v. Killian Oaks House of Learning, Inc., 248 F.Supp. 2d 1162.  The court may reduce a fee award for time which is "excessive, redundant or otherwise unnecessary."  Id.  In certain cases, the court's discretion can include an outright denial of attorney fees to a prevailing party when such an award would be unjust.  See also  Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1313 (M.D. Fla. 2001).

34.     In the present case, counsel for the plaintiff not only engaged in dilatory tactics, but it also now seeks a fee aware in an amount almost 500% of the amount recovered on behalf of the plaintiffs.  In realty, if the plaintiffs merely filed timely and truthful statements of claim, this matter would have been resolved within days of the filing of such documents.  This is proven by the fact that indeed the claims were resolved within days of the plaintiffs filing statements of claims.

35.     Ultimately, the computation of a fee award is necessarily an exercise of judgment because "there is no precise rule or formula for making these determinations." Villano v. City of Boynton Beach, 254 F. 3d 1302 (11th Cir. 2001); Hensley v. Eckerhart, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983).  In this case, the conduct of the plaintiffs and their counsel confirm that most of the work in this matter was necessitated by their own dilatory conduct. Despite all of the bogus calculations provided by the plaintiffs in their motion for attorney fees, the inescapable truth is that the defendant quickly capitulated to the demands of the plaintiffs to *avoid* excessive attorney fees and costs when the plaintiffs finally provided relatively accurate statements of claim.  To be clear, the statements of claim also sought "liquated damages" in an amount twice unpaid wages.  In none of those cases were the plaintiffs successful.  In realty, the

plaintiffs merely obtained an amount which the defendants eventually claimed once their game of "hide and go seek concluded" by court order and by virtue of having a false statement of claim exposed. To award any attorney fees and costs for such conduct would be unjust and merely create an incentive for attorneys in FLSA cases to engage in practices which delay even the ability to settle claims knowing they might subsequently be permitted to obtain attorney fees which are unjust, egregious and are grossly disproportionate to the amount received by the plaintiff.

36. In the event this court denies The Shavitz Law Group attorney fees, it would not be the first time. The Shavitz Law Group previously filed a claim against Lindstrom Air under FLSA on behalf of a gentleman named Guy Kenol. See <u>Kenol v. Lindstrom Air</u>, Case No. 06-61402-CIV-HUCK/SIMONTON (U.S.D.C. S. Dist. Fla. 2006). In that case, The Shavitz Law Group had their case involuntarily dismissed for failing to file an accurate statement of claim and for selecting a client who intentionally avoided the obligations and orders of this United States District Court. The conduct of Mr. Cajigas is no different.

WHEREFORE, it is respectfully requested that the following relief be entered against The Shavitz Law Group:

    A.    An order denying attorney fees and costs based on conduct which violated court orders;

    B.    An order denying attorney fees and costs based on dilatory conduct; and

    C.    An order to show cause be entered pursuant to Federal Rule of Civil Procedure 11(c)(1)(B) on the issue of sanctions based on filing a false statement of claim and filing to produce documents;

D.      Counsel for the defendants be reimbursed its attorney fees and costs from March 28, 2007 (the date the false statement of claim of Mr. Cajigas was filed) to July 2, 2007 (the date the revised statement of claim was filed); and

E.      All other relief this court deems appropriate.

## Certificate of Service

I certify that a true and correct copy of the foregoing document was served on Gregg Shavitz, Esq., Shavitz Law Group, P.A., 1515 S. Federal Highway, Suite 404, Boca Raton, Florida 33432 on this **15th** day of October, 2007.

THE WOLFF LAW FIRM
1401 East Broward Blvd.
Victoria Park Center, Ste 305
Fort Lauderdale, Florida 33301
Telephone: (954) 565-5040
Facsimile: (954) 827-8300
E-Mail: cwolff@wolfflawfirm.com

By: **s/ Clifford A. Wolff, Esq.**
CLIFFORD A. WOLFF, ESQ.
Florida Bar Number 0076252